**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**UNITED STATES OF AMERICA,**

            -against-                           **MEMORANDUM AND ORDER**

**OLSEN KEY,**                                      **98-CR-446 (ERK)**

                       **Defendant.**
-------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

       Defendant Olsen Key ("Key" or "defendant") submitted a request to Judge Edward R. Korman to seal all documents related to his federal criminal case, and, in particular, "any and all information" relating to his cooperation with the government. See Letter to the Court from Olsen Key (Apr. 20, 2010) ("Key 4/20/10 Letter") at 1, Docket Entry ("D.E.") #92 (filed under seal); see also Letter to the Court from Olsen Key (June 1, 2010) ("Key 6/1/10 Letter") (filed under seal). On July 14, 2010, Judge Korman referred Key's application to the undersigned magistrate judge. See Order (July 14, 2010).[1] For the reasons that follow, Key's request is denied.

## FACTUAL BACKGROUND

       On May 14, 1998, Key waived indictment and pled guilty to two federal drug-related charges, pursuant to a cooperation agreement with the government. See Calendar Entry (May 14, 1998), D.E. #16; Letter to the Court from Assistant United States Attorney Judith Phillips (May 25, 2010) ("AUSA 5/25/10 Letter") at 2, D.E. #94. He was released from custody on

---

[1] Key also requested that the Court arrange a telephone conference to address this matter, see Letter to the Court from Olsen Key (dated May 9, 2010), D.E. #93 (filed under seal), but Judge Korman denied that request in an endorsed order on May 18, 2010. See id.

an unsecured bond on August 17, 1999. See Calendar Entry (Aug. 17, 1999), D.E. #18. Years later, on March 19, 2003, Key pled guilty in state court to several crimes arising out of the kidnapping and stabbing of his then girlfriend, and was sentenced to eighteen years in prison; he was then returned to federal custody and sentenced on the 1998 federal charges on July 31, 2007, receiving time served on the drug charge and, on the gun count, a five-year term, to run consecutive to his state sentence. See Calendar Entry (July 31, 2007), D.E. #67; Judgment (Aug. 15, 2007), D.E. #68; AUSA 5/25/10 Letter at 2.[2] The Second Circuit affirmed his federal sentence on July 29, 2009. See United States v. Key, 339 F. App'x 42 (2d Cir. 2009). Although his 2003 state conviction was reversed and remitted on technical grounds, see People v. Key, 884 N.Y.S.2d 106 (2d Dep't 2009), Key re-pled guilty to the same charges on April 23, 2010, and was sentenced to a seventeen-year prison term on June 30, 1010. See Letter to the Court from AUSA Judith Phillips (July 21, 2010), D.E. #98.

Key now requests that the Court seal his plea and sentencing minutes, defense counsel's sentencing memorandum, and any and all documents relating to his cooperation with federal authorities, on the ground that their disclosure would pose a safety risk to him and to his family. See Key 4/20/10 Letter at 1.[3] Key claims that public availability of these documents would endanger his family because the documents reference several individuals -- previously

---

[2] Because Key violated the terms of his 1998 cooperation agreement by committing another crime, the government declined to submit a § 5K1.1 letter on his behalf. See AUSA 5/25/10 Letter at 2.

[3] While focusing on documents relating to his cooperation, Key at various times asks to seal "the entire case file," though no reasons are given for that request. See Key 6/1/10 Letter at 4; Key 4/20/10 Letter at 2.

close to his family members -- about whom Key provided information to the government and who are now released from prison.  See Key 4/20/10 Letter at 2; Key 6/1/10 Letter at 4.  Key also claims that individuals in possession of his entire case file have communicated death threats to him.  See Key 6/1/10 Letter at 2-3.

## DISCUSSION

In deciding whether to seal documents the Court must consider "two clearly legitimate and competing concerns." United States v. Zazi, Nos. 09-CR-663 (RJD), 10-CR-0019 (RJD), 2010 WL 2710605, at *2 (E.D.N.Y. June 30, 2010).  The Second Circuit has made clear that in criminal cases, the press and the public have a qualified First Amendment (and common law) right of access to plea agreements, as well as plea and sentencing proceedings.  See United States v. Alcantara, 396 F.3d 189, 196 (2d Cir. 2005); United States v. Haller, 837 F.2d 84, 86-87 (2d Cir. 1988); see also Gambale v. Deutsche Bank AG, 377 F.3d 133, 140 & n.4 (2d Cir. 2004).  While this right of access even extends to plea agreements and related documents disclosing defendants' cooperation, see Zazi, 2010 WL 2710605, at *2, the right is presumptive and not absolute:  courts may seal documents if "specific, on the record findings" demonstrate that sealing "is essential to [preserve] higher values and is narrowly tailored to serve that interest."  Zazi, 2010 WL 2710605, at *2 (quoting Alcantara, 396 F.3d at 199, and Haller, 837 F.2d at 87).  "Broad and general findings" are insufficient to justify sealing.  Matter of New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987).

The Second Circuit has established a four-prong test to reconcile these competing interests.  Zazi, 2010 WL 2710605, at *2 (internal citations omitted).  First, the Court must determine, in specific, on-the-record findings, whether there exists "a substantial probability of

prejudice to a compelling interest" that sealing would prevent.  Id.  Second, if a substantial probability of prejudice exists, the Court must consider whether "reasonable alternatives" can adequately protect that interest.  Id.  Third, if there are no reasonable alternatives, the Court must determine whether, under the circumstances, "the prejudice to the compelling interest override[s]" the right of access.  Id.  Finally, if sealing is warranted, the Court must devise a "narrowly tailored" order to protect the endangered interest.  Id.

The power to seal criminal records "is one to be very seldom exercised, and even then only with the greatest caution, under urgent circumstances, and for very clear and apparent reasons."  United States v. Cojab, 996 F.2d 1404, 1405 (2d Cir. 1993).  The "right of access is the rule, and it is a rare and exceptional case where it does not apply . . . ."  Zazi, 2010 WL 2710605, at *4 (quoting Cojab, 996 F.2d at 1407).  The party moving to seal documents bears the burden of demonstrating that sealing is warranted.  See id. at *2.

Consequently, the question facing this Court is whether Key has met his burden of establishing that continued disclosure of documents referencing his cooperation would create a substantial probability of prejudice to a compelling interest, sufficient to override the First Amendment presumption of access.  Defendant claims to have received death threats due to his cooperation with the government, and he states that he also fears for his family's safety, because family members were associated with individuals about whom Key provided information to the government.  See Key 6/1/10 Letter at 3-5; Key 4/20/10 Letter at 2.  Key's safety and the safety of his family certainly present compelling interests.

Nevertheless, defendant states that the persons making the threats are already in possession of his entire file.  See Key 6/1/10 Letter at 2-3.  In fact, much of Key's court file

has been unsealed since his federal criminal case commenced, and the publicly available record has long been replete with references to his cooperation. See, e.g., Transcript of Criminal Cause for Sentencing Proceedings as to Olsen Key (July. 31, 2007) ("7/31/07 Tr.") at 10-11, 13, 17, 18-19, 25-26, D.E. #82 (describing Key's substantial cooperation, naming individuals about whom Key provided information to the government, describing Key's methods of obtaining information, and indicating that Key received a shorter sentence as a result of his cooperation); Transcript of Criminal Cause for Status Conference as to Olsen Key (Oct. 20, 2006) at 2-3, D.E. #79; Transcript of Criminal Cause for Status Conference as to Olsen Key (Mar. 30, 2007) at 2, D.E. #80. In fact, since 2007, Key has asserted in open court that inmates at his detention facility were aware of his cooperation. See 7/31/07 Tr. at 19. Key offers no evidence that sealing now what has long been in the public record will prevent some enhanced risk of substantial prejudice to his or his family's safety. Cf. Zazi, 2010 WL 2710605, at *4 (finding that when media had already reported suspected cooperation, a safety risk did not justify continuing to seal documents confirming cooperation, absent a showing of "enhanced risk of substantial prejudice" to safety interests if documents were disclosed); United States v. Basciano, Nos. 03-CR-929, 05-CR-060, 2010 WL 1685810, at *4 (E.D.N.Y. Apr. 23, 2010) ("Shielding third parties from unwanted attention arising from an issue that is already public knowledge is not a sufficiently compelling reason to justify withholding judicial documents from public scrutiny.").

Further, Key's increasingly improbable arguments undermine the credibility of his claims. He stated in April 2010 that the Nassau County Assistant District Attorney prosecuting his state case intended to release information about his cooperation to "the public and news

reporters." Key 4/20/10 Letter at 2. This never happened. He makes a further, unsubstantiated claim that the Nassau County District Attorney's Office and the federal prosecutor assigned to the instant case planned to release his file to "aid and support" Kathleen Rice's (unsuccessful) campaign for New York State Attorney General. Key 6/1/10 Letter at 4. That apparently never happened. Simply put, Key's implausible arguments do not constitute credible evidence of an enhanced safety risk were the documents to remain unsealed.

In these circumstances, given that Key's court file has largely been public for several years, and that the individuals allegedly making threats are already in possession of his court file, the Court concludes that declining to seal the records is unlikely to further prejudice Key's safety interest or that of his family. See Zazi, 2010 WL 2710605, at *1 (denying government's motion to maintain under seal documents referencing defendants' cooperation in a case charging conspiracy to use weapons of mass destruction to blow up New York City subways). Nothing in the record suggests that this is one of the "rare and exceptional case[s]" where sealing is essential to preserve a higher value. Id. at *4. This Court therefore holds that the First Amendment right of access overrides Key's concerns and that the court filings and records should not be sealed.

## CONCLUSION

For the foregoing reasons, this Court denies defendant's motion to seal his court file.

Any objections to the ruling contained in this Memorandum and Order must be filed with the Honorable Edward R. Korman on or before **October 4, 2010.** Failure to file objections in a timely manner may waive a right to appeal the District Court order.

The Clerk is directed to enter this Memorandum and Order into the ECF system and to mail a copy to Key at his last known address:

>Olsen Key - CC #090007577
>Nassau County Correctional Center
>100 Carman Avenue
>East Meadow, NY 11554-1146

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**September 15, 2010**

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**